Harold H. **HENRY** and Chester Waddell, d/b/a Kirksville Implement Company, a co-partnership (Plaintiffs), Appellants,

v.

Alva F. **VAUGHN** and M. G. Burge, d/b/a Vaughn and Burge Implement Company, a co-partnership (Defendants), Respondents.

No. 29991.

St. Louis Court of Appeals. Missouri.

June 3, 1958.

Rehearing Denied July 1, 1958.

Robert L. Hawkins, Jefferson City, Jayne & Jayne, Kirksville, for appellants.

Myrl Sternke, Palmyra, Carstarphen & Harvey, Hannibal, for respondents.

ANDERSON, Judge.

The plaintiffs, Harold H. Henry and Chester Waddell, brought this suit against Alva F. Vaughn and M. G. Burge for damages for an alleged breach of warranty contained in a certain contract under which plaintiffs purchased from defendants a caterpillar tractor bulldozer. The defendants counterclaimed for damages for breach of an alleged warranty made by

plaintiffs with reference to certain farm machinery given by plaintiffs in exchange for said bulldozer. The trial resulted in a verdict against plaintiffs on their cause of action, and against defendants on defendants' counterclaim. Judgment was entered accordingly, and plaintiffs have appealed.

Plaintiffs were partners engaged in the farm implement business at Kirksville, Missouri, and defendants were partners engaged in the farm implement business at Palmyra, Missouri. Each plaintiff, in addition, operated a farm, and their purchase of the bulldozer in question was for individual use on their farms.

Defendants had advertised the bulldozer for sale in a Quincy newspaper. On March 9, 1955, Waddell went to Palmyra in response to this advertisement and met defendants Vaughn and Burge in their office. Waddell told Burge that he and his partner were interested in such a machine for use on their farms and desired to trade in for it some farm machinery they owned. The bulldozer was in defendants' place of business at the time. Waddell saw the bulldozer and started its motor, but did not drive it. The motor seemed to operate properly. There was then considerable discussion during which Burge stated that: "We guarantee and recondition everything we sell." Thereafter, and on the same day, Burge went to Kirksville and examined plaintiffs' farm implements—a Massie Harris self-propelled combine, a John Deere hay bailer, and a John Deere field harvester. After Burge had examined said machinery an agreement was reached between the parties for an exchange of the properties. The agreement was reduced to writing, and was on an order form addressed to Vaughn & Burge Implement Company. The material parts of said contract are as follows:

"The undersigned orders from you * * * the following described goods, viz.:

1 HD5 Cat Allis Chalmers with 8' Baker Dozer, fully reconditioned and guaranteed.

For which I (we) agree to pay the Total Selling Price as follows:

1—1952 26 Super Massey Harris 10' self-propelled combine

1—116 W P.T.O. John Deere Hay Bailer

1—John Deere field harvester * * "

In addition, there was a provision for the payment by plaintiffs of the sum of $250. It was then provided:

"This Order, taken subject to acceptance by the Seller, is signed in Triplicate and together with the Conditions of Sale and Warranty and Agreement printed on the reverse side hereof constitutes the entire agreement between us. One copy of same being retained by the Purchaser(s), receipt of which is hereby acknowledged.

"Signed   Kirksville Imp. Co.
"By         Chester Waddell
"Accepted ————
"By         Mac Burge"

The warranties referred to as being printed on the reverse side were expressly stated not to be applicable to used or secondhand goods. The defendants' bulldozer and plaintiffs' farm implements were all secondhand as used machines.

About ten days after the contract was signed Mr. Burge delivered the bulldozer to plaintiffs at their place of business in Kirksville. On that same day, defendants took possession of the combine, and a few days thereafter took possession of the hay bailer and field harvester.

About thirty days after the bulldozer was delivered it was taken to Mr. Waddell's farm where the latter attempted to use it in filling ditches. Before taking the bulldozer to the farm Waddell changed the oil filters, drained the oil from the motor and replaced it with new oil. This oil was 30 weight, the kind specified by Allis-Chalmers. After

starting to operate the machine at the farm the oil pressure dropped. Waddell then put in some heavy oil, 40 weight, but when he again started to operate the machine the oil pressure dropped. The oil pressure would drop whenever the motor became warm. Also, according to plaintiffs' testimony, the hydraulic lift would not raise the blade when the latter was pushed against the dirt. Waddell operated the bulldozer about an hour on that occasion, and testified that he then called Mr. Burge on the telephone. Waddell stated: "I told him we didn't have any engine oil pressure, and the hydraulic lift wouldn't lift. * * * I told him that it wasn't in operating condition, that it needed repairs, and we didn't have facilities there at our place to do it, and he wanted to know where I thought I could get it done. I said I called Cook's at Chillicothe and they could do it and he suggested I take it to Cook's and get it repaired and he would pay the bill, so that is what we did."

About a week after this conversation Waddell took the bulldozer to Cook's Service and Sales Company in Chillicothe. According to plaintiffs' evidence, extensive repairs were found to be necessary. The total bill for the parts used and the labor expended in making these repairs amounted to $1,036. After the repairs were made the bulldozer operated satisfactorily.

Defendant Burge testified that about thirty days after the bulldozer was delivered to plaintiffs Waddell called him on the telephone and stated that the hydraulic system on the bulldozer was not working properly. Burge testified he told Waddell that defendants' men were too busy to fix it, and that he should get some one in Kirksville to take care of it. Burge stated he did not authorize Waddell to have any other part fixed, or authorize Waddell to have any other firm repair the bulldozer.

Burge further testified that defendants did considerable repair work on the bulldozer before it was delivered to the plaintiffs; that men in defendants' employ checked it. When the head of the motor was taken off a water leak was discovered. This leak was repaired by Allis-Chalmers Sales & Service Company in Fulton; new injector sleeves were put in the motor; and the valves were ground. The cylinders and blower were checked for wear. The clutch, brake, and steering clutches were adjusted, after which they were in good operating condition. Inspection showed the transmission to be in good operating condition. Witness Harold Johnson, who supervised the repairs, testified that he found nothing wrong with the hydraulic lift system. He stated that the motor was in operating condition when he made his last check. Burge testified that after these repairs the motor operated properly.

Mr. Burge further testified that before the deal was closed Mr. Waddell told him that all three pieces of farm machinery which he was to receive in the trade "were in working condition ready to go to the field." Burge then testified, over the plaintiffs' objection, that all three pieces of machinery were in a defective condition. There was testimony as to the nature of these defects and evidence that the cost of the necessary repairs amounted to $713.30.

Plaintiffs' verdict-directing instruction told the jury that defendants represented and guaranteed to plaintiffs that the bulldozer so sold to them had been fully reconditioned, and that if they found that it was not in truth and in fact fully reconditioned, but required labor and parts to fully recondition it, their verdict should be for plaintiffs on plaintiffs' cause of action.

Defendants' verdict-directing instruction, which submitted their counterclaim, charged that: "If the jury find from the evidence that the said farm machinery was * * * represented to be reasonably suitable for the use and service the respective pieces of farm machinery were designed and constructed to do when properly operated, and * * * that such farm ma-

chinery was not as represented * * * but required repair work in order to so reasonably operate in doing the work designed and constructed to do when properly operated, then you will find the defendants are entitled to recover on defendants' counterclaim herein."

■ Appellants charge that the court erred in refusing to sustain their motion to strike defendants' counterclaim. Defendants' counterclaim sought to recover damages for breach of warranty alleged to have been made separate and apart from the written contract, wherein it was agreed that the farm machinery exchanged was in condition to be forthwith put to use for the purpose the articles were designed and constructed to perform. Plaintiffs' motion averred that defendants' pleading did not state a cause of action, for the reason that any evidence in support thereof would be violative of the parol evidence rule. We will not rule the point raised, since there was a verdict and judgment for plaintiffs on defendants' counterclaim. Error in refusing to sustain a motion to strike a cross-claim is harmless where there is no finding or judgment in favor of the counterclaim. Mackey v. First National Bank of Centralia, Mo.App., 293 S.W. 66; Schropp v. Zeilda Forsee Inv. Co., Mo.Sup., 224 S.W. 424; 5 C.J.S. Appeal and Error § 1687, page 866.

■ The defendants pleaded the alleged parol agreement in their answer to plaintiffs' petition, and plaintiffs moved to strike said allegation on the ground that it was an attempt to vary the terms of a written contract by parol. The court overruled said motion, which action of the court is now urged as error. We must also rule this point against appellants. The matter pleaded in said answer was not submitted as a part of the defense to plaintiffs' cause of action.

■ Finally, it is urged that the court erred in permitting testimony with respect to the alleged representation and guarantee of the farm machinery which plaintiffs traded to defendants, and in admitting evidence of the defects in said machinery. The basis of the objection to this evidence was that its reception violated the parol evidence rule. This testimony was offered by defendants in support of the counterclaim. As heretofore stated, the jury found in favor of plaintiffs on the issue presented by said counterclaim. Defendants not having appealed from this finding, plaintiffs may not be heard to complain relative thereto. Mackey v. First National Bank of Centralia, Mo.App., 293 S.W. 66, loc. cit. 69.

■ But appellants contend that, notwithstanding the fact that they were awarded a verdict on the counterclaim, the false issue of the counterclaim caused the jury to "go haywire in finding a verdict against plaintiffs on their original cause of action." We are not persuaded to this view. The court submitted plaintiffs' cause of action and defendants' counterclaim in separate instructions in each instance which clearly directed the attention of the jury to the specific issues and the facts to be found by them in arriving at their verdict. There was no language used in the instruction submitting plaintiffs' case which would confuse the jury into the belief that they could consider the alleged improper testimony in rendering a verdict on plaintiffs' cause of action. Also, the result of the trial indicates that the jury were not so confused. In our judgment, the admission of the testimony was harmless.

Finding no reversible error in the record, the judgment appealed from is affirmed.

RUDDY, P. J., and JAMES D. CLEMENS, Special Judge, concur.